**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| Chambers of<br>**Ellen Lipton Hollander**<br>District Court Judge | 101 West Lombard Street<br>Baltimore, Maryland 21201<br>410-962-0742 |

January 15, 2015

MEMORANDUM TO COUNSEL

    Re:    *Rybas, et al. v. Riverview Hotel Corp., et al.*
             Civil Action No. ELH-12-3103

Dear Counsel:

    As you know, this is a tort action involving injuries suffered by plaintiff Margaret Rybas in October 2010, when she fell while dancing on a portable dance floor at a wedding reception. In late 2012, Ms. Rybas and her husband, Edward Balajewski, sued Riverview Hotel Corporation t/a Sandaway Bed & Breakfast ("Sandaway"), where the wedding reception was held, and the wedding caterer, PeachBlossoms, Inc. ("PeachBlossoms"), alleging negligence and loss of consortium.

    Plaintiffs' expert designation, served on defendants on or about October 10, 2013, named Gregory Harrison, Ph.D., as an expert and indicated that he would testify consistent with his Report of October 8, 2013. ECF 79-4 at 3. Further, plaintiffs advised that Dr. Harrison, a registered professional engineer, would opine that plaintiffs "acted appropriately at all times"; he would refute the opinions of any defense experts; and he would testify that the dance floor was "improperly situated." *Id.*

    After several extensions, discovery (both fact and expert) was completed in late December 2013. *See* ECF 39, 40. Each defendant subsequently filed a summary judgment motion, and both were extensively briefed. *See* ECF 47 (Sandaway's motion); ECF 50 (PeachBlossoms' motion); ECF 55 (plaintiffs' omnibus response); ECF 56 (PeachBlossoms' reply); ECF 57 (Sandaway's reply). Numerous exhibits were presented to the Court in connection with the motions.

    In a Memorandum (ECF 59) and Order (ECF 60) dated August 27, 2014, I denied both summary judgment motions. Thereafter, on August 29, 2014, I scheduled a telephone conference with counsel to be held on September 16, 2014, to finalize the schedule for the case. *See* ECF 61. By Order dated September 17, 2014 (ECF 64), and in accordance with our discussions during the teleconference of September 16, 2014, I set the trial date of February 23, 2015, along with other deadlines. Of particular relevance here, I set the following schedule:

December 19, 2014: "Deadline for *Daubert* motions, if any;"[1] January 9, 2015: "Deadline for motions in limine, if any.  ECF 64 at 1.

"A motion *in limine* is a request for guidance by the court regarding an evidentiary question." *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983), *aff'd*, 469 U.S. 38 (1984). Motions in limine help to streamline a case, because such motions "enable[] a court to rule in advance on the admissibility of documentary or testimonial evidence and thus expedite and render efficient a subsequent trial.'" *INSLAW, Inc. v. United States,* 35 Fed. Ct. 63, 65-66 (1996) (citation omitted).  Such rulings are preliminary, made in the discretion of the court, and assist counsel in preparation for trial.  *Luce*, 713 F.2d at 1239-40.  When the evidence is actually offered at trial, the trial court may change its ruling.  *Id*. at 1239.

A *Daubert* motion is a variation of a motion in limine.  As the seasoned and experienced counsel in this case well know, a *Daubert* motion is a shorthand reference to a pretrial challenge to the admissibility of proposed expert testimony under F. R. Evid. 702.

Given the age of this case and the fact that discovery was competed in December 2013, I would have expected *Daubert* challenges, if any, well before the telephone conference I held in September 2014.  Regrettably, I had not set a filing deadline for *Daubert* motions as of the conference on September 16, 2014.  Nonetheless, I note that in *Discovery Problems And Their Solutions* (2nd ed. 2009) ("Discovery Problems"), authored by Judge Paul Grimm, Charles Fox, and Paul Sandler, the authors observed, *id*. at 277: "If the scheduling order does not have a deadline for filing motions challenging expert testimony, an attorney who proposes to make such a challenge should contact the court *before* the discovery cutoff, inform chambers (and opposing counsel) of the likelihood of a *Daubert/Kumho Tire/* Fed. R. Evid. 702 challenge, and request imposition of a deadline.  It is important to do this sufficiently far in advance of trial to allow the court to schedule a Fed. R. Evid. 104(a) hearing." (Emphasis added).

In any event, during the phone conference, I set a deadline for *Daubert* motions, out of an abundance of caution, to avoid a last minute challenge to proposed expert witnesses coupled with a claim that no order barred a belated challenge.  That deadline – December 19, 2014 – was a generous one, and it was confirmed in ECF 64.  I set a separate deadline of January 9, 2015, for motions in limine.  *Id.*  And, I am satisfied that counsel understood the distinctions between *Daubert* motions and motions in limine generally, for which I set varying deadlines.

On January 7, 2015, Sandaway filed a "Motion to Exclude, or in the Alternative to Limit the Scope of, the Expert Testimony of Plaintiffs' Expert, Gregory A. Harrison Ph.D," ECF 75, along with a Memorandum, ECF 75-1 (collectively, the "Sandaway Motion").  Sandaway submitted several exhibits to support its motion.  These include an excerpt of the deposition of Dr. Harrison taken on December 19, 2013 (ECF 75-2, the "Harrison Deposition"); the Expert Report of Dr. Harrison, dated October 8, 2013 (ECF 75-3, the "Harrison Report"); and the

---

[1] *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

Expert Report of Brian L. Mills, P.E., dated October 30, 2013 (ECF 75-4, the "Mills Report").[2] Mills was retained by Sandaway, and the Mills Report had been submitted as an exhibit in connection with the briefing of the summary judgment motions. *See* ECF 50-20 (PeachBlossoms' motion); ECF 55-1 (plaintiffs' response).

On January 9, 2015, PeachBlossoms filed a "Line," joining Sandaway's Motion (ECF 80). On the same date, PeachBlossoms filed a "Motion *in Limine* Regarding Plaintiffs' Expert Gregory Harrison," ECF 79, along with a Memorandum, ECF 79-1 (collectively, "PeachBlossoms Motion"), and several exhibits. Specifically, it submitted the Expert Report of Dr. Harrison, dated October 8, 2013 (ECF 79-2); an excerpt of the deposition of Dr. Harrison taken on December 19, 2013 (ECF 79-3); Plaintiffs' Initial Expert Witness Designation Pursuant to Federal Rule of Civil Procedure 26(a)(2) dated October 10, 2013 (ECF 79-4); and Plaintiff Margaret Rybas's Answers to PeachBlossoms's Interrogatories (ECF 79-5).

I shall refer to the Sandaway Motion and the PeachBlossoms motion collectively as the "Motions." In the Motions, it is apparent that, among other things, defendants challenge the methodology used by Dr. Gregory Harrison to arrive at his expert opinions, as well as the validity and reliability of his opinions. The Motions were filed more than a year after Dr. Harrison was deposed in December 2013; about three weeks after the deadline set for *Daubert* motions in ECF 64; and a mere six weeks before trial.

In response to the Motions, plaintiffs moved to strike them. ECF 81 ("Motion to Strike"). They argue, *inter alia*, that the Motions are untimely and that defendants provided "no excuse or good cause" for the "failure to file these motions" by the deadline of December 19, 2014. *Id*. at 2.

No hearing is necessary to resolve the Motions or the Motion to Strike.

Dr. Gregory Harrison is a registered professional engineer with a Master's Degree in construction management, ECF 75-2 at 4, and a Ph.D in Safety Engineering. ECF 79-4 at 2. He has investigated more than 1000 fall incidents. ECF 79-4. He is a Fellow of the American College of Forensic Examiners, as well as a Diplomat, American Board of Forensic Engineering & Technology. ECF 75-3 at 10. In addition, Dr. Harrison is a professional musician. ECF 75-2 at 5.

Dr. Harrison's Report, submitted in October 2013, is ten pages in length and contains ten opinions. *See* ECF 75-3. They include the following:[3]

Opinion No. 1: "[T]he subject dance floor area, which the subject slip and fall incident occurred on, was unsafe and not in compliance with either the technical provisions nor the spirit

---

[2] Apparently, Mills was not deposed. ECF 75-1 at 6.

[3] I have not included Opinions 4, 5, 6, and 9 because they are not specifically mentioned in the Motions.

and intent of the LSC or the past/present model building codes or any other standard of care with regards to pedestrian use and safety of walkway surfaces. ECF 75-3 at 7.

Opinion No. 2: "[T]he subject dance floor was not in compliance with the spirit and intent of the technical provisions of the standard of care as represented by standard hotel safety manuals or hotel floor care policy manuals regarding floor care safety and maintenance. *Id.*

Opinion No. 3: "[T]he subject dance floor walkway surface was not free of a slip and fall hazard because of the presence of water/wetness on its walking surface, which was located within the 'Means of Egress.'" *Id.* at 8.

Opinion No. 7: "[T]he owner and/or the owner's agents should have known of the unsafe slippery dance floor condition given that it was exposed to a wet grassy area prior to one's entry and taken actions to include barring its use until made safe or posted warnings on the floor. *Id.* at 9.

Opinion No. 8: "[T]he owner and/or the owner's agents should have known of the unsafe slippery dance floor condition given that it was exposed to a wet grassy area prior to one's entry and taken actions to include barring its use until made safe or posted warnings on the floor. *Id.* at 9-10.

Opinion No. 10: "[T]he root cause or proximate cause of Ms. Rybas' slip and fall was due to a wet and slippery dance floor surface created by water and/or wet grass aggravated by a less than customary and usual level dance floor surface. *Id.* at 10.

In its motion, Sandaway focuses on Dr. Harrison's tenth opinion. It seeks to exclude or limit Dr. Harrison's testimony for the following reasons, ECF 75 at 1-2:

(1) Dr. Harrison's opinions regarding the cause of Ms. Rybas's fall are not based on scientific, technical or other specialized knowledge and consequently, are inadmissible;

(2) Dr. Harrison does not have an appropriate foundation under Fed. R. Evid. 702 to express opinions as to the slipperiness of the dance floor at issue based on the report of a potentially non-testifying expert retained by Sandaway;

(3) Dr. Harrison's personal opinions concerning the "mindset" of Sandaway's representatives are inadmissible, irrelevant, inappropriate and, if allowed to be expressed, would be unduly and unfairly prejudicial to Sandaway and;

(4) Dr. Harrison's opinions regarding the speed of dance Ms. Rybas was participating in at the time of her fall are beyond the purview of his designated expertise in this case and lack appropriate foundation.

In its motion, PeachBlossoms challenges Dr. Harrison's first, second, fifth, seventh, eighth, and tenth opinions. ECF 79-1 at 4-6. In general, PeachBlossoms seeks to exclude Dr. Harrison's causation opinions under Fed. R. Evid. 702. PeachBlossoms contends that Dr. Harrison's opinion as to the cause of the fall lacks the "[r]equisite [f]oundation," ECF 79-1 at 6, because it was not based on "scientific, technical, or other specialized knowledge." *Id.* at 7 (citing Fed. R. Evid. 702). Further, PeachBlossoms argues that Dr. Harrison's conclusion that Rybas did "nothing wrong" is "pure speculation" and impermissible as a "legal conclusion." *Id.* at 15. And, PeachBlossoms posits that Dr. Harrison's opinion regarding PeachBlossoms is "immaterial," "highly prejudicial," and a product of his "apparent bias toward the plaintiffs and against the defendants." *Id.* at 17-18.

Under Federal Rule of Evidence 104(a), the court has the responsibility to "decide any preliminary questions" concerning the qualification of a witness and the admissibility of evidence. This includes the admissibility of expert testimony under Federal Rule of Evidence 702.

Federal Rule of Evidence 702 provides that a properly qualified expert witness may testify regarding technical, scientific, or other specialized knowledge in a given field if it would assist the trier of fact to understand the evidence or to determine a fact in issue. Notably, Rule 702 establishes certain requirements for the admission of expert testimony. It states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*. 509 U.S. 579 (1993), the Supreme Court said that expert scientific evidence is admissible under Fed. R. Evid. 702 if it "rests on a reliable foundation and is relevant to the task at hand." *Id.* at 597. The Court explained that expert scientific testimony must be grounded "in the methods and procedures of science," and it must be something "more than subjective belief or unsupported speculation." *Id.* at 589-90. Moreover, the evidence must be relevant to the extent that it will "'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Id.* at 591 (quoting Fed. R. Civ. P. Rule 702); *see also United States v. Forrest,* 429 F.3d 73, 80-81 (4th Cir. 2005).

Under *Daubert*, the trial court serves as the gatekeeper, making a pretrial determination "of whether the reasoning or methodology underlying the testimony is scientifically valid and of

whether that reasoning or methodology properly can be applied to the facts in issue." 509 U.S. at 592-93. This gatekeeper role helps ensure that the jury hears reliable and relevant evidence with probative value, and which will assist the jury in its factual determinations and clarify issues. *Id.* at 596. In *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141 (1999), the Supreme Court extended the principles pertaining to scientific expert testimony to other expert testimony requiring technical or specialized knowledge.

In the Motions, Sandaway and PeachBlossoms have not explicitly referred to *Daubert*, although both cite Rule 702. But, the omission of a reference to *Daubert* does not change the character or import of the Motions. Regardless of the titles of the Motions, Sandaway and Peachblosooms have clearly lodged *Daubert* challenges in the Motions. For example, Sandaway maintains that Dr. Harrison's opinions "are not based on scientific, technical or other specialized knowledge and consequently, are inadmissible" and that there is a lack of "appropriate foundation under Fed. R. Evid. 702 to express opinions as to the slipperiness of the dance floor" and the "speed of dance. . . ." ECF 75 at 1-2. PeachBlossoms asserts a similar argument. *See*, *e.g.*, ECF 79-1 at 7.

Sandaway also argues that Dr. Harrison should not be permitted to rely upon or refer to slip resistance testing of an exemplar of the portable wooden dance floor performed by Brian Mills, P.E., Sandaway's expert, "because the report, standing along, does not demonstrate a sufficient foundation for opinions regarding the slipperiness of the portable wooden dance floor." ECF 75-1 at 6.[4] Sandaway has not decided whether to call Mills at trial and claims that, "in the absence of foundation testimony by Mr. Mills, Dr. Harrison lacks an appropriate foundation of facts, data, reliable principles and reliable methods to opine as to the slipperiness of the portable wooden dance floor." *Id.*

As indicated, the reliability and foundation of an expert's opinion are central to the analysis under *Daubert*, 509 at 592-93, 597. Sandaway's first, second, and fourth arguments, and PeachBlossoms' first argument, plainly fall under the umbrella of *Daubert*. And, as noted, I set a deadline of December 19, 2014, for *Daubert* motions. ECF 64. To the extent that the defense Motions (ECF 75, ECF 79) raise *Daubert* issues, they were untimely filed on January 7 and January 9, respectively, without any explanation or showing of good cause for the untimeliness.

Without question, Sandaway and PeachBlossoms had ample time to submit timely *Daubert* challenges to the expert testimony of Dr. Harrison. His Report was disclosed in October 2013 and Dr. Harrison was deposed in December 2013. At the deposition, the foundation and methodology for his opinions were explored. Similarly, as of the December 2013 deposition, defendants knew of Dr. Harrison's reliance on data obtained by Mills, an expert who had been designated by Sandaway and who performed "slip resistance testing" on an "exemplar dance floor segment." ECF 75-1 at 6. Yet, defendants inexplicably waited over a year to complain about Dr. Harrison's testimony, including his reliance on Mills' report.

---

[4] As indicated, PeachBlossoms has joined the Sandaway Motion. ECF 80.

To the extent defendants have lodged *Daubert* challenges, such contentions require an appropriate time for briefing. Moreover, *Daubert* challenges often necessitate an evidentiary hearing in advance of trial, as well as time for the Court to issue a considered ruling. As noted in *Discovery Problems*, *id.* at 277, "a Fed. R. Evid. 104(a) hearing can last for days; the court must consider and address all of the *Daubert/Kumho Tire*/Fed. R. Evid. 702 factors to make a proper ruling. Obviously, such a rigorous hearing cannot easily take place on the eve of trial." And, the outcome of such a ruling could have a profound impact on the case, particularly at the 11th hour. The untimely *Daubert* Motions filed here place the Court in an untenable position of having to await briefing, conduct a hearing after briefing, and immediately resolve seemingly thorny issues that go to the heart of plaintiffs' liability claim, without regard to the press of other matters on the court's docket. The belated filings could readily affect the ability of the Court to proceed to trial on February 23, 2015.

"Motions filed out of time are accepted at the discretion of the trial court." *United States v. Johnson*, 953 F.2d 110, 115-16 (4th Cir. 1991) (affirming denial of motion to suppress evidence filed on the eve of trial, nearly three weeks after the trial court's deadline for submission of pretrial motions); *see Lopez v. NTI, LLC*, 748 F. Supp. 2d 471, 475 (D. Md. 2010) ("Tardy motions are not to be encouraged" but concluding that the court has discretion to consider a motion filed out of time) (citations omitted). Courts issue scheduling orders specifically to avoid such dilemmas, and they are intended to be taken seriously. *See Hare v. Opryland Hospitality,* LLC, 2010 WL 3719915, at *3 (D. Md. 2010) ("[A] court's scheduling order "'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.'"") (quoting *Potomac Elec. Power Co. v. Elec. Motor Supply, Inc.*, 190 F.R.D. 372, 375 (D. Md. 1999))) (quoting *Gestetner v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Me. 1985)); *Forstmann v. Culp*, 114 F.R.D. 83, 85 (M.D.N.C. 1987) (same); *see also* Fed. R. Civ. P. 16(b)(1), (3)(A) (requiring scheduling order that "limit(s) the time to join other parties, amend the pleadings, complete discovery, and file motions"); 16(b)(4) (permitting a scheduling order to "be modified *only* for good cause *and* with the judge's consent) (emphasis added).

For all of these reasons, I decline at this late date to consider any *Daubert* challenges contained in the Motions.

However, the Motions also involve issues that are not purely *Daubert* matters. For example, Sandaway challenges Dr. Harrison's deposition testimony as to the speed with which Ms. Rybas danced during the wedding. Dr. Harrison did not mention the speed of Ms. Rybas' dancing in his Report. ECF 75-3. *See* Harrison Deposition at 14-17, ECF 75-2. At his deposition, however, Dr. Harrison was questioned about the topic. For example, he was asked whether a certain dance, the jitterbug, is "fast moving," and Dr. Harrison responded: "It's not a slow dance. But fast is Lindy Hop or, if you got ballroom shoes on and you are really, really good, then for demonstration and competition they jack up the music. But typical rock and roll, triple step, triple step, back step, it's about that fast, da-da-da-da." *Id.* at 16:10-16. Despite having notice of this testimony for over a year, Sandaway waited until the proverbial eleventh hour to argue in its motion that "Dr. Harrison is not an expert in the field of dance," was not designated as an expert in that field, and lacks a foundation for such testimony. ECF 75-1 at 11.

Sandaway is correct that Dr. Harrison was not specifically designated as an expert in estimating dance speeds. But, I do not know whether estimates of speed are customarily within the expertise of a professional engineer who is tasked with evaluating the safety of a portable wooden dance floor. Nor do I know whether, in evaluating the safety of a dance floor, a safety expert generally or customarily must consider various forms of dance. At trial, plaintiffs must establish, *inter alia*, that such opinions are within the expert's area of expertise. Obviously, expert opinions cannot be based on speculation. Therefore, I will defer further ruling on this issue until trial.

Sandaway has not yet determined whether to call Mills as an expert witness at the trial. ECF 75-1 at 6. But, it appears that Mills was disclosed as an expert by the defendant. Given Sandaway's designation of Mills, his report was not work product. Indeed, it was submitted at the summary judgment stage. Nevertheless, defendants challenge Harrison's use of and reliance on facts and data obtained by Mills if Mills does not testify.

Under appropriate circumstances, an expert can use facts obtained by an opposing designated expert, produced during discovery. The accuracy of the underlying facts is, of course, subject to cross-examination. On the other hand, expert testimony cannot be introduced to rebut an opinion that is contained in a report or testimony of an expert who is not called to testify at trial.

Defendants also challenge Harrison's testimony as containing improper legal conclusions. Testimony that states a legal conclusion is not admissible. *Elat v. Ngoubene*, 993 F. Supp. 2d 497, 512 (D. Md. 2014) (Grimm, J.); *see also United States v. Offill*, 666 F.3d 168, 175 (4th Cir. 2011); *United States v. Chapman*, 209 Fed. App'x. 253, 269 (4th Cir. 2006); Fed. R. Evid. 704 advisory committee note. On the other hand, "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). And, an expert's opinion may concern "questions of fact that are committed to resolution by the jury." *United States v. McIver*, 470 F.3d 550, 561 (4th Cir. 2006). As the Fourth Circuit has noted, "[t]he line between a permissible opinion on an ultimate issue and an impermissible legal conclusion is not always easy to discern." *Id*. at 562. Therefore, I will resolve at trial any challenges to Harrison's proposed testimony, on the ground that it contains improper legal conclusions, if timely objections are made during the course of testimony.

Sandaway also challenges Dr. Harrison's personal opinions about the "'mindset'" of Sandaway's representatives, arguing that such testimony is inadmissible and prejudicial. ECF 75 at 1; *see also* ECF 75-1 at 7-9. Sandaway points to Dr. Harrison's deposition testimony. There, in response to a question from defense counsel, Dr. Harrison criticized Ms. Gibson, an owner of Sandaway, for her alleged disregard of safety. He said, in part: "'She gets the safety unconscious label. . . .'" *See* ECF 75-1 at 7 (quoting Harrison deposition).

Assuming that Dr. Harrison is qualified as an expert at trial in the appropriate field, he would be permitted to opine as to alleged safety defects at the site. In forming his opinions, he may consider relevant facts that are probative. However, he would not be permitted to characterize Ms. Gibson as one who "gets the safety unconscious label."

In sum, given the upcoming trial set for February 23, 2015, ECF 64 at 1, and for the reasons set forth herein, I decline to consider the Motions to the extent that they are untimely *Daubert* challenges.  Therefore, the *Daubert* challenges in the Motions (ECF 75, 79, 80) are DENIED as untimely.  However, to the extent the Motions are conventional motions in limine, the Motions are timely.  Therefore, the Motion to Strike (ECF 81) is GRANTED in part and DENIED in part.  The motion in limine with respect to Dr. Harrison's characterization of Ms. Gibson (ECF 75) is GRANTED.  As to any remaining motions in limine in ECF 75 and 79, I will defer ruling until trial.

Despite the informal nature of this Memorandum, it is an Order of the Court and the Clerk is directed to docket it as such.

    Very truly yours,

      /s/

    Ellen Lipton Hollander
    United States District Judge